**Nos. 15-2177 & 15-2225**

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

MICHAEL SCOTT & LAMONT JONES,
*Appellants*,

v.

EDUCATION MANAGEMENT CORPORATION,
*Appellee*.

Appeal from the United States District Court
for the Western District of Pennsylvania,
Nos. 14-537 (Cercone, J.), 14-536 (Fischer, J.)

## APPELLEE'S RESPONSE BRIEF

Catherine S. Ryan
Kim M. Watterson
Richard L. Heppner Jr.
James T. Holt
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA  15222
Phone:  (412) 288-3131

*Counsel for Appellee Education
Management Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT ............................................................ 1

PRELIMINARY STATEMENT..................................................................... 1

STATEMENT OF THE ISSUES ................................................................... 3

STATEMENT OF THE CASE........................................................................ 4

    A.   The Arbitration Agreement ..................................................... 5

        1.   The Terms Of The ADR Policy ................................... 6

        2.   The Implementation Of The ADR Policy .................. 9

    B.   Factual Background ................................................................. 11

        1.   Plaintiffs Receive Negative Performance Reviews And File EEOC Complaints ...................... 11

        2.   EDMC Implements The ADR Policy, And Plaintiffs Amend Their EEOC Complaints ............. 12

        3.   Plaintiffs Receive Additional Negative Performance Reviews And Are Terminated........... 13

        4.   The EEOC Affords Plaintiffs The Opportunity To Provide More Evidence In Support Of Their Claims, But Plaintiffs Instead Request Right-To-Sue Letters.................................................. 14

    C.   Procedural History .................................................................. 15

        1.   Procedural History of *Scott v. EDMC* ...................... 15

        2.   Procedural History of *Jones v. EDMC* ...................... 19

SUMMARY OF ARGUMENT .................................................................. 24

STANDARD OF REVIEW ..................................................................... 26

ARGUMENT ........................................................................................... 26

I.    Plaintiffs' Claims Must Be Sent To Arbitration
      Because They Are Covered By The ADR Policy ......................... 26

      A.    Governing Law ..................................................................... 27

      B.    The ADR Policy Is A Valid Agreement To
            Arbitrate ................................................................................ 29

      C.    The ADR Policy Covers Plaintiffs' Claims ......................... 37

II.   The ADR Policy Was Not Retaliatory Under
      Title VII Or The ADEA .................................................................... 39

      A.    Governing Law ..................................................................... 40

      B.    An Arbitration Agreement Is Not A
            Materially Adverse Action ................................................... 41

      C.    There Is No Causal Connection Between
            Plaintiffs' EEOC Activities And The
            Implementation Of The ADR Policy .................................. 46

III.  The District Courts Did Not Err By Dismissing
      Plaintiffs' Claims With Prejudice ................................................... 47

IV.   This Case Does Not Present An Issue Regarding
      Federal Rule of Evidence 408 .......................................................... 50

V.    The District Court Did Not Err By Not Granting
      Summary Judgment for Plaintiffs .................................................... 53

CONCLUSION ........................................................................................ 55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acher v. Fujitsu Network Commc'ns, Inc.,*
    354 F.Supp.2d 26 (D. Mass. 2005) ................................................. 30, 34

*Adams v. Gheen Irrigation Works, Inc.,*
    Civ. No. 08-6148, 2008 WL 3539624 (D. Or. Aug. 13,
    2008) ....................................................................................................... 34

*Alexander v. Raymours Furniture Co.,*
    Civ. No. 13-5387, 2014 WL 3952944 (E.D. Pa. Aug. 13,
    2014) ................................................................................................... 29, 36

*Am. Eagle Outfitters v. Lyle & Scott Ltd.,*
    584 F.3d 575 (3d Cir. 2009) ............................................................. 29, 32

*American Exp. v. Italian Colors Restaurant,*
    133 S.Ct. 2304 (2013) ............................................................................ 42

*Antonelli v. New Jersey,*
    419 F.3d 267 (3d Cir. 2005) .................................................................. 26

*AT&T Mobility LLC v. Concepcion,*
    131 S.Ct. 1740 (2011) ............................................................................ 36

*ATACS Corp. v. Trans World Communications, Inc.,*
    155 F.3d 659 (3d Cir. 1998) .................................................................. 29

*Blair v. Scott Specialty Gases,*
    283 F.3d 595 (3d Cir. 2002) ........................................................... *passim*

*Burlington N. & Santa Fe Ry. v. White,*
    548 U.S. 53 (2006) ........................................................................... 41, 42

*Century Indemnity Co. v. Certain Underwriters at Lloyd's,
    London,*
    584 F.3d 513 (3d Cir. 2009) ........................................................... 33, 37

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ............................................................................ 28

*Devon Robotics, LLC v. DeViedma,*
798 F.3d 136 (3d Cir. 2015) .................................................................. 1

*DuBois v. Macy's East Inc.,*
338 F.App'x 32 (2d Cir. July 9, 2009) ........................................... 30, 34

*Eddy v. Corbett,*
381 F.App'x 237 (3d Cir. 2010) ..................................................... 27, 54

*EEOC v. Waffle House,*
534 U.S. 279 (2002) .......................................................................... 45

*Ellerbee v. GameStop, Inc.,*
604 F.Supp. 2d 349 (D. Mass. 2009) .................................................. 34

*Evans v. Atria Assisted Living,*
Civ. No. 01-1193, 2001 WL 34355643 (E.D. Pa. Dec. 21,
2001) ................................................................................................... 33

*Flintkote Co. v. Aviva PLC,*
769 F.3d 215 (3d Cir. 2014) ............................................................... 28

*Fogleman v. Mercy Hosp., Inc.,*
283 F.3d 561 (3d Cir. 2002) ............................................................... 40

*Frank C. Pollara Group, LLC v. Ocean View Inv. Holding,
LLC,*
784 F.3d 177 (3d Cir. 2015) ............................................................... 53

*Gilmer v. Interstate / Johnson Lane Corp.,*
500 U.S. 20 (1991) ............................................................................ 42

*Gladysiewski v. Allegheny Energy Serv. Corp.,*
282 F.App'x 979 (3d Cir. 2008) ..................................................... 27, 54

*Green Tree Fin. Corp.-Alabama v. Randolph,*
531 U.S. 79 (2000) ............................................................................ 49

- iv -

*Gutman v. Baldwin Corp.*,
No. 02-7971, 2002 WL 32107938 (E.D. Pa. Nov. 22, 2002) ............... 33

*Hamilton v. Travelers Prop. & Cas. Corp.*,
No. 01-11, 2001 WL 503387 (E.D. Pa. May 11, 2001) ........................ 34

*Kaneff v. Delaware Title Loans, Inc.*,
587 F.3d 616 (3d Cir. 2009) ................................................................. 26

*Keystone Tech. Grp., Inc. v. Kerr Grp., Inc.*,
824 A.2d 1223 (Pa. Super. 2003) ......................................................... 35

*Khazin v. TD Ameritrade Holding Corp.*,
773 F.3d 488 (3d Cir. 2014) ........................................................... 37, 43

*Lloyd v. HOVENSA, LLC.*,
369 F.3d 263 (3d Cir. 2004) ................................................................. 48

*Marra v. Philadelphia Hous. Auth.*,
497 F.3d 286 (3d Cir. 2007) ........................................................... 40, 46

*Masoner v. Educ. Mgmt. Corp.*,
18 F.Supp. 3d 652 (W.D. Pa. 2014) ............................................. *passim*

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................. 40

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ......................................................................... 42, 43

*Morgan's Home Equip. Corp. v. Martucci*,
136 A.2d 838 (Pa. 1957) ...................................................................... 35

*Morrison v. Circuit City Stores, Inc.*,
70 F.Supp. 2d 815 (S.D. Ohio 1999) ................................................... 34

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................................................... 28, 35

*Pryor v. Nat'l Collegiate Athletic Ass'n.*,
288 F.3d 548 (3d Cir. 2002) ................................................................. 26

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.,*
   673 F.3d 221 (3d Cir. 2012) .................................................. 27

*Seus v. John Nuveen & Co.,*
   146 F.3d 175 (3d Cir. 1998) ........................................... 37, 48

*Socko v. Mid-Atl. Sys. of CPA, Inc.,*
   126 A.3d 1266 (Pa. 2015).......................................... 34, 35, 53

*Tinder v. Pinkerton Sec.,*
   305 F.3d 728 (7th Cir. 2002) ................................................ 34

*United States v. DeMichael,*
   461 F.3d 414 (3d Cir. 2006) ...................................... 27, 47, 52

*United States v. Hoffecker,*
   530 F.3d 137 (3d Cir. 2008) ...................................... 27, 47, 52

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
   133 S.Ct. 2517 (2013) .................................................. *passim*

*Verma v. Univ. of Pa.,*
   533 F.App'x. 115 (3d Cir. 2013) ......................................... 47

*Wilkerson v. Serv. Corp. Int'l,*
   Civ. No. 02-0982, 2003 WL 21052128 (S.D. Ind. Apr. 2,
   2003) ................................................................................. 34

*Wilson v. Darden Rests., Inc.,*
   Civ. No. 99-5020, 2000 WL 150872 (E.D. Pa. Feb. 11,
   2000) ............................................................................ 30, 34

## Statutes

9 U.S.C. § 4 ......................................................................... 28

9 U.S.C. § 16(a)(3) .................................................................. 1

9 U.S.C. § 16(b).................................................................... 49

28 U.S.C § 1291 ...................................................................... 1

28 U.S.C. § 1331 ............................................................................. 1

29 U.S.C. § 621 *et seq.*................................................................... 1

29 U.S.C. § 623(d) ........................................................................ 40

42 U.S.C. § 2000e *et seq.*.............................................................. 1

42 U.S.C. § 2000e-3 ...................................................................... 40

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because the cases arose under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.*

This Court has jurisdiction under 28 U.S.C § 1291 and 9 U.S.C. § 16(a)(3) because this consolidated appeal arises out of final decisions of the district court. *See Devon Robotics, LLC v. DeViedma,* 798 F.3d 136, 144 (3d Cir. 2015) (appellate jurisdiction exists from order dismissing claims in favor of arbitration).

## PRELIMINARY STATEMENT

This consolidated appeal arises from two cases brought against Appellee Education Management Corporation ("EDMC"). In those cases, former EDMC employees, Appellants Michael Scott and Lamont Jones (together, "Plaintiffs"), asserted discrimination and retaliation claims under Title VII and the ADEA. In each case, a district court judge applied controlling federal law to the language of EDMC's binding ADR Policy and ruled that Plaintiffs' claims are subject to arbitration under the Policy.

On appeal, Plaintiffs do not seriously contend that the ADR Policy does not cover their claims. Instead, they take a different tack in their effort to avoid arbitration, arguing that EDMC implemented its company-wide arbitration policy as retaliation for Plaintiffs'

protected activity—specifically their filing of EEOC complaints. Plaintiffs' argument is based on a fundamental misreading of the ADR Policy, defies logic, and is contrary to controlling federal law governing retaliation claims.

The district court rejected Plaintiffs' arguments, and with good reason:  Nothing in the ADR Policy prohibits EDMC employees from, or punishes them for, filing EEOC complaints.   And there is no evidence (and Plaintiffs' allegations do not even plausibly suggest) that EDMC adopted its company-wide arbitration policy, which applied to thousands of employees, to retaliate against Plaintiffs for filing their EEOC complaints.  Moreover,  as a matter of law and fact, EDMC's implementation of the ADR Policy was not an adverse act. Arbitration, as a general matter, does not deprive an employee of any substantive rights and this arbitration agreement, in particular, is highly protective of an employee's procedural rights.

For the reasons more fully discussed below, this Court should affirm both district court orders sending Plaintiffs' claims to arbitration.

# STATEMENT OF THE ISSUES[1]

1.      Whether the district court correctly ruled that Plaintiffs' claims are subject to arbitration.

2.      Whether the district court correctly ruled that the arbitration agreement is not retaliatory under Title VII or the ADEA.

3.      Whether the district court correctly dismissed Plaintiffs' claims with prejudice when ordering them to arbitration.

---

[1] EDMC has restated the principal issues Plaintiffs raise. Plaintiffs' brief discusses two other purported issues that pertain to matters on which there is no district court ruling and, thus, are not presented by this case on appeal. *See* Sections IV-V, *infra*.

## STATEMENT OF THE CASE[2]

The two cases consolidated on appeal arise from the same uncontested facts.  In brief:

- In the summer of 2012, EDMC began to implement an Alternative Dispute Resolution Policy.

- Around that same time, Plaintiffs both filed EEOC complaints alleging discrimination.

- In October 2012, EDMC emailed the ADR Policy to all covered EDMC employees, including Plaintiffs.

- The ADR Policy did not bar EEOC filings, including Plaintiffs'.  In fact, the ADR policy expressly reserved the rights of EDMC employees to file EEOC charges and the EEOC's right to investigate such charges.

- Both Plaintiffs complained to the EEOC that the ADR Policy was retaliation for their prior complaints.

- Both Plaintiffs continued to work for and receive compensation from EDMC, until they were eventually terminated months later.

- The EEOC found insufficient evidence to pursue Plaintiffs' claims and both Plaintiffs requested Notices of Right to Sue.

- Plaintiffs sued EDMC in separate actions, alleging claims under Title VII and ADEA.

---

[2] Materials in the Joint Appendix are cited as "JA__."

- The two district court judges to whom Plaintiffs' cases were assigned (Cercone, J. and Fischer, J.) eventually dismissed Plaintiffs' cases and ordered them to arbitration under the ADR Policy.

What follows is a summary of the relevant uncontested facts drawn from both district court proceedings.[3]

## A.    The Arbitration Agreement

In the summer of 2012, EDMC developed its Alternative Dispute Resolution Policy and Procedures (the "ADR Policy") to address and resolve all work-related disputes between EDMC and its employees.  JA80, 93, 84-89.  The ADR Policy applied to thousands of current and future EDMC employees.  JA84.  The ADR Policy created a multi-step process for dispute resolution, which permitted

_____

[3] All the facts described are uncontested.  When possible, they are drawn directly from Plaintiffs' complaints.  However, because Plaintiffs filed their complaints *pro se*, and because their claims explicitly invoked EDMC's ADR Policy, the district court also relied on later-filed factual pleadings and evidence.  (Both Plaintiffs eventually were represented by counsel.)  In *Scott*, the court applied "the more stringent summary judgment standard" "out of an abundance of caution," but found it could "resolve the issues without the aid of discovery" and dismissed the case in favor of arbitration. JA10.  In *Jones*, the court permitted discovery (JA323-24) and also ultimately dismissed the case in favor of arbitration (JA21-22).  As discussed below, dismissal was appropriate under either the Rule 12(b)(6) motion-to-dismiss standard and the Rule 56 summary judgment standard.

employees to file EEOC complaints, and culminated in binding arbitration.  JA84-89.

### 1.    The Terms Of The ADR Policy

The ADR Policy informs employees that it "is intended to create the *exclusive means* by which *all work-related disputes* between Education Management Corporation (and its related entities … ) and its employees will be promptly addressed and fairly resolved."  JA84 (emphasis added).

The ADR Policy defines a broad range of covered disputes, categorizing them into two "levels."  JA84-85.  The "Level One Disputes" category, which is relevant here, includes "[c]laims alleging a violation of legally protected rights such as claims of employment discrimination, harassment, retaliation, wrongful termination or other alleged unlawful treatment [under] state, local or federal law.  JA84-85.  "By way of example," the Policy provides that Level One Disputes include "alleged violations of the Age Discrimination in Employment Act of 1967; the Civil Rights Acts of 1964 and 1991; … or any alleged violation of public policy, … or any dispute arising out of the discipline, demotion or termination of any employee or any other personnel issue of a substantial nature."  JA84-85.

The ADR Policy establishes a detailed four-step mechanism for resolving Level One Disputes:

- Step One: "Informal Resolution" in which employees may attempt to work directly with their supervisor, management, or the Human Resources or Employee Relations Departments to resolve any work-related issue.

- Step Two: "Submission to the Company's Senior Management" in which employees submit "formal" written notice of their claim(s) to the Vice President of Employee Relations, who investigates and attempts to resolve the matter within 30 days.

- Step Three: Mediation facilitated by a "professional, neutral Mediator." Mediation "is not mandatory but is strongly encouraged."

- Step Four: Arbitration before an individual arbitrator or a panel of three arbitrators. Arbitration is mandatory and the "final and binding resolution" of the dispute.

JA85-88.

The ADR Policy describes in detail the arbitration mandated under Step 4, fully informing employees how the arbitration would proceed:

> If the matter is not resolved at Step One, Two, or Three (or if the parties do not avail themselves of these opportunities), then all covered disputes (see Level One Disputes, above) *shall* be submitted to Arbitration *for final and binding resolution*.
>
> …

> This Arbitration Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Arbitration Agreement requires all such disputes to be resolved *only through final and binding Arbitration and not by way of court or jury trial*.
>
> …
>
> The [Arbitrator's] award shall be final and binding on the Company and the employee and not subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C. §§ 1-16, or in any instance where the Arbitrator(s) has exceeded the Arbitrator's authority as defined herein, including failure to follow applicable law.

JA86-88 (emphasis added).

The ADR Policy expressly preserves employees' right to seek administrative remedies with the EEOC, while requiring arbitration of claims once the administrative process is exhausted:

> Both the Company and the employee *retain the right to file administrative charges with any federal, state, or local administrative agency* with enforcement responsibilities. However, after exhaustion of the administrative process, any remaining issue or dispute between the Company and its employee shall be resolved exclusively through these dispute resolution procedures.

JA86 (emphasis added).

The ADR Policy makes clear that it is a binding, mutual agreement between EDMC and the employee, which employees accept by continuing their employment at EDMC:

> [C]ontinuing employment with the Company after receipt of this Policy constitutes agreement to abide by its terms.
>
> …
>
> This section entitled 'Binding Arbitration' is the full and complete agreement between the Company and its employees relating to the resolution of employment-related disputes in Arbitration.

JA84, 88 (emphasis added).

## 2.    The Implementation Of The ADR Policy

The ADR Policy was announced and rolled out to existing EDMC employees through emails in September and October 2012, as well as through inclusion on the EDMC intranet and in the employee handbook.    JA81, 94.    As explained below, both Plaintiffs were informed of the ADR Policy on October 3, 2012 through automated emails sent to all covered employees by Linda Hunter, EDMC's Vice President of Human Resources.    JA36, 51.    The content of all the automated e-mails was identical and read as follows:

> EDMC has implemented an Alternative Dispute Resolution Policy to promptly and fairly address all work-related disputes.  This policy allows for both informal and formal avenues for resolving concerns.

> This Policy is a term and condition of your continued employment with EDMC. Please click <u>here</u> to access the ADR Policy.
>
> Please acknowledge by clicking <u>here</u> that you received, reviewed and agree to comply with the Alternative Dispute Resolution Policy. Questions regarding the Alternative Dispute Resolution Policy should be directed to your appropriate Human Resources or Employee Relations Representative.

JA81, 94.

Around November 12, additional notice e-mails about the ADR Policy were sent to employees, including Jones, who had not yet clicked on the provided link to affirmatively acknowledge their agreement. It stated:

> Recently, we notified all employees of EDMC's new Alternative Dispute Resolution (ADR) Policy and asked for acknowledgement of the policy. We have not yet received your acknowledgement. You can review the policy <u>by clicking here</u>, and we ask that all employees read and become familiar with the policy.
>
> In addition, please acknowledge the new ADR Policy <u>by clicking here</u> to signify that you received, reviewed and agree to comply with the policy. Questions regarding the ADR Policy should be directed to your appropriate Human Resources or Employee Relations Representative.

JA94-95.[4]

### B.    Factual Background

#### 1.    Plaintiffs Receive Negative Performance Reviews And File EEOC Complaints

Plaintiffs Lamont Jones and Michael Scott were employed as Assistant Directors of Admissions at the Art Institute of Pittsburgh, an EDMC subsidiary.   JA37, 41, 52, 55.   In late July 2012, both Plaintiffs received quarterly job evaluations that rated their performance "below expectations."  JA37-38, 53.

Jones was issued a write-up based on the evaluation, on August 1, which he characterizes in his complaint as a "formal warning notice."  JA53.

Plaintiffs filed EEOC complaints, on August 3 and 6.  JA53, 38. Jones alleged race and age discrimination (Charge No. 533-2012-01070).  JA53.  Scott alleged age discrimination (Charge No. 533-2012-01096).  JA38.

---

[4] The notice emails are described and quoted in the sworn Declarations of Linda Hunter, EDMC's Vice-President of Human Resources, filed in connection with EDMC's motions to dismiss Plaintiffs' claims.  JA80-89, 93-102.  Plaintiffs repeatedly confirmed the accuracy of the declarations and relied on the descriptions of the emails.  *See, e.g.*, JA153, 787, 798.

Scott received two write-ups based on his evaluation, on August 8, which he alleges were "based on trumped-up allegations and hearsay." JA38. In September, Scott took short term disability leave. JA38.

### 2. EDMC Implements The ADR Policy, And Plaintiffs Amend Their EEOC Complaints

As explained, EDMC rolled out a company-wide ADR Policy in late September and early October 2012. JA80-89, 93-102. Plaintiffs, along with thousands of other EDMC employees, received the announcement email regarding the ADR Policy on October 3. JA36, 51, 53, 81, 94.

Jones's counsel wrote an email to EDMC that same day, asserting that the announcement email and the ADR policy were retaliatory. JA685. Jones's counsel incorrectly described the announcement email as a "written threat to fire" Jones and incorrectly described the ADR Policy as "an agreement, retroactive to July of 2012, not to file a discrimination complaint with the U.S. Equal Employment Opportunity Commission." JA685.

Jones amended his EEOC complaint the next day, supplementing his previously filed EEOC complaint and alleging that the October 3 email was retaliation for it. JA215, 224-27, 790-91, 802-10. Jones's EEOC complaint also mischaracterized the announcement email. JA804 ("I was told that I would be fired

because I had filed an EEOC complaint against my employer. The notification came in an email from Linda Hunter, EDMC's Vice President of Human Resources for The Art Institutes.")

Scott amended his EEOC complaint on October 5, alleging that the two write-ups he received in August and the ADR Policy itself were both retaliation for his earlier EEOC complaint. JA196-97, 651, 665.

### 3. Plaintiffs Receive Additional Negative Performance Reviews And Are Terminated

Jones received another negative quarterly performance evaluation in October 2012. JA54.

Scott returned from disability leave in late December. JA38. He alleges that, upon his return, EDMC had "given away his company-generated 'warm leads' on prospective students" and assigned him unattainable recruitment quotas. JA39.

Plaintiffs both received negative quarterly job performance evaluations in January 2013. JA39, 54.

Jones's employment with EDMC was terminated for performance reasons on January 24. JA54. Thereafter, he filed another EEOC complaint (Charge No. 533-2013-00526) alleging that his termination was discriminatory and retaliatory. *See* JA63, 217, 296.

Scott amended his EEOC complaint in January to include a claim for disability discrimination (Charge No. 533-2013-00946). JA39.[5]  Scott alleges that, in March 2013, the school president criticized his job performance and a human resources employee was eavesdropping on his conversations with co-workers.  JA39.  Scott alleges that he refused to withdraw his EEOC complaint "under EDMC's pressure," although he does not describe any demand or other pressure from EDMC to withdraw it.  JA39.

Scott's employment with EDMC was terminated for performance reasons in April 2013.  JA39.

### 4.    The EEOC Affords Plaintiffs The Opportunity To Provide More Evidence In Support Of Their Claims, But Plaintiffs Instead Request Right-To-Sue Letters

In January 2014, the EEOC determined there was insufficient evidence for it to pursue either of Plaintiffs' cases and issued letters requesting more evidence.  JA205, 296.[6]  Plaintiffs did not submit

---

[5] Scott did not pursue a disability discrimination claim in court. JA36-43.

[6] Without explanation, Plaintiffs redacted the portions of the EEOC's January 16, 2014 letters describing the EEOC's evaluation of the evidence.  JA205, 228.  After discovery, EDMC filed an unredacted version of Jones's letter.  JA296.  In both cases, it is clear that the EEOC determined there was insufficient evidence for it to proceed.

additional evidence and instead requested Notices of Right to Sue, which the EEOC issued on January 24.  JA44-45, 63-64.

### C.    Procedural History

#### 1.    Procedural History of *Scott v. EDMC*

Scott filed a complaint in the United States District Court for the Western District of Pennsylvania on April 24, 2014, alleging that EDMC:  (i) discriminated against him because of his age and retaliated against him, in violation of the ADEA; (ii) discriminated against him on an unspecified basis and retaliated against him, in violation of Title VII; and (iii) wrongfully discharged him in violation of Pennsylvania common law.  JA36-50.[7]  Scott's case (*Scott*) was assigned to Judge David S. Cercone.  JA23.

EDMC moved to dismiss on July 21, 2014 (JA77-89), arguing that Scott's case should be sent to arbitration pursuant to the ADR Policy.  JA103-17.  Scott, now represented by counsel, filed a response to the motion to dismiss, along with a cross-motion for partial summary judgment on August 25.  JA147.

Judge Cercone struck Scott's motion for partial summary judgment because it was "inappropriate at this stage of the

---

[7] Scott's complaint, like Jones's, was filed *pro se*, but on August 22, 2014 the same counsel entered appearances for both Plaintiffs.  JA145-46.

litigation," noting that it was struck "without prejudice to [Scott] raising such issues at the appropriate time," *i.e.* after discovery had taken place.  JA165.

In response to EDMC's motion to dismiss, Scott made the thrust of his argument clearer.  He did not contest the validity of the ADR Policy, its application to Title VII claims, or that it could be applied retroactively—arguing instead that "*a retroactive policy requiring an employee to withdraw his pre-existing federal discrimination complaint or face termination*" is impermissibly retaliatory:

> Plaintiff does **not** dispute Defendant's contention – expounded over 12 pages of red-herring argumentation in its Memorandum of Law – that ADR policies precluding employees from complaining directly to federal authorities, as he did, are legal even in the Title VII area.  Nor does plaintiff dispute even the notion that such policies can be made retroactive by employers, as EDMC concedes it did, to be quoted *infra*, notwithstanding established federal policy disfavoring such retroactivity, cited *infra*.  Plaintiff *does* contend – as Title VII provides, as federal appellate courts across the country have held, and as the Supreme Court of the United States has held – that *a retroactive policy requiring an employee to withdraw his pre-existing federal discrimination complaint or face termination* is plainly illegal retaliation in violation of Title VII and perhaps The ADEA, as well.

JA154-55 (all emphases in original).

In its reply (JA186-94), EDMC first noted the points that Scott had conceded (JA186-87). Then, responding to Scott's retaliation argument, EDMC explained that, contrary to Scott's characterization, the ADR Policy "does not bar pre-existing claims" or prevent an employee from filing an EEOC complaint, either retroactively or prospectively. JA187 (quoting the ADR Policy provision stating "[b]oth the Company and the employee retain the right to file administrative charges with any federal, state or local administrative agency with enforcement responsibilities"). In short, as EDMC put it, "[n]othing in the ADR Policy inhibited [Scott] or any other employee from pursuing pre-existing claims, let alone, as [Scott] mistakenly claims, required employees to withdraw such claims or threatened employment termination for not doing so." JA188.

Scott filed a response to EDMC's reply brief (JA195-204), to which he attached a redacted copy of the January 16, 2014 EEOC letter requesting additional evidence (JA205). Scott also included a lengthy quotation from his EEOC Retaliation Questionnaire, where he wrongly described the ADR Policy as forbidding his original EEOC complaint, under threat of termination. JA197 (describing the ADR Policy as "an agreement, … not to file a discrimination complaint with the U.S. Equal Employment Opportunity Commission," and describing the notification email as "EDMC's

written threat to fire me if I do not withdraw my E.E.O.C. complaint").

The district court granted EDMC's motion to dismiss and compel arbitration in a memorandum order entered March 11, 2015. JA6-15. The court first determined that it could consider the ADR Policy because it was central to Scott's retaliation claim, and also determined to "apply the more stringent summary judgment standard" allowing Scott to rely on evidence that he had not adduced or included with his complaint. JA10.

The court noted the issues that Scott did *not* contest: "that he was aware of the ADR Policy," "that the policy was a term and condition of his continued employment," "that after reviewing the policy, he continued his employment with EDMC," and "that his continued employment with, and receipt of compensation from, EDMC was adequate consideration to enforce the ADR Policy." JA14. Then the court considered whether the ADR Policy applied to Scott's claims, holding that it did. JA14-15.

In so holding, the district court relied on an opinion in an earlier case from the Western District of Pennsylvania interpreting the same EDMC ADR Policy: *Masoner v. Educ. Mgmt. Corp.*, 18 F.Supp. 3d 652 (W.D. Pa. 2014). In *Masoner*, the court (Conti, J.) held that, under the Federal Arbitration Act ("FAA"), the ADR Policy applied to claims that arose and were filed prior to Policy's the

effective date.  *Id.* at 661-62.  As *Masoner* noted, the ADR Policy, by its plain language, "applies to *all* claims between [the employee] and EDMC" and thus can reasonably be read to cover existing claims— accordingly, the FAA's presumption in favor of arbitrability applies. *Id.*  Moreover, *Masoner* reasoned, there is no reason not to apply an arbitration agreement entered into after a claim arose or was filed— indeed, parties regularly agree to arbitrate claims after they arise or after litigation has commenced.  *Id.* at 661 n.4.

Scott moved for reconsideration (JA639-56), and the district court denied the motion on April 9, 2015, holding that the motion was based only on Scott's view that the court's prior decision was legally incorrect, which, without more (clerical error, change in law, extraordinary circumstances, etc.), is not grounds for reconsideration under any of the rules Scott invoked.  JA16-18.

### 2.    Procedural History of *Jones v. EDMC*

On the same day Scott filed his complaint, Jones filed a complaint in the United States District Court for the Western District of Pennsylvania, alleging that EDMC:  (i) discriminated against him because of his race and retaliated against him, in violation of Title VII; (ii) discriminated against him because of his age and retaliated against him, in violation of the ADEA; and (iii) wrongfully discharged him in violation of Pennsylvania common law.  JA51-66. Jones's case (*Jones*) was assigned to Judge Nora Barry Fischer.  JA29.

As in *Scott*, EDMC moved to dismiss (JA90-102), arguing that Jones's case should be sent to arbitration pursuant to the ADR Policy (JA118-32). Jones eventually filed a response to EDMC's motion. JA169-85.[8] Unlike Scott, Jones did not move for partial summary judgment, but he repeated the same arguments Scott made, namely that EDMC's implementation of the ADR Policy was impermissible retaliation because the Policy either required him to withdraw his EEOC complaint or retroactively forbade him from filing it, on pain of threatened termination. *See* JA179 (compare JA154-55).

EDMC replied. JA207-13. As it had in *Scott*, EDMC pointed out the issues Jones had conceded (JA207-08) and explained that the ADR Policy did not require Jones to withdraw his EEOC complaint, retroactively forbid him from filing it, or threaten termination (JA208-09).

Jones filed a response to EDMC's reply brief. JA214-29. He attached the first four pages of his EEOC retaliation intake questionnaire (JA224-27), arguing that it showed that he had alleged

---

[8] Jones missed the deadline to respond to EDMC's motion, and Judge Fischer ordered him to show cause why his complaint should not be dismissed. JA143. On September 2, Jones, now represented by counsel, filed a "Response to Show Cause Order" stating that he had mistakenly believed that the court would *sua sponte* deny the motion to dismiss. JA166.

that the ADR Policy was retaliatory and that the notification email had threatened him with termination (JA215).  He also attached a redacted copy of the January 16, 2014 EEOC letter that requested additional evidence (JA228), arguing that it showed EDMC had no legal defense to the retaliation charge (JA215) (though, in fact, the letter shows EDMC's nonretaliatory reasons for terminating Jones (JA296)).  Jones also argued that he was not contesting the validity of the ADR Policy or its enforceability under the FAA—but was arguing only that it was impermissibly retaliatory under Title VII.  JA216-20. Finally, Jones argued that *Masoner* was irrelevant because he was not challenging the enforceability of the ADR Policy, only whether instituting the Policy was retaliatory.  JA221.

Judge Fischer heard oral argument on EDMC's motion.  JA237-78.  While questioning Jones's counsel, Judge Fischer focused on Jones's retaliation theory, asking pointedly:  "But when this policy is issued and it's to all employees, then and how in that vein can this argument continue that it's retaliatory?"  JA268. Jones responding by saying that "[r]etaliation doesn't have to be specific."  JA268.  At the close of the argument, Judge Fischer ordered supplemental briefing, asking specifically for "cases where the claim is that this policy as it comes down in and of itself is retaliatory vis-à-vis whatever other claims that are currently in the works."  JA272-73.

EDMC explained in its supplemental brief that Jones's view of retaliation was wrong as a matter of law.  JA279-96.  As the United States Supreme Court held in *University of Texas Southwest Medical Center. v. Nassar*, retaliation does have to be specific to the plaintiff's protected activity — to show retaliation, an employee "must establish that *his or her* protected activity was a *but-for cause* of the alleged adverse action by the employer."  133 S.Ct. 2517, 2534 (2013), (emphasis added).  For his part, Jones did not identify any case where an arbitration agreement was considered retaliation for an employee's protected activity or address the legal issue of whether retaliation has to be "specific" to, *i.e.* caused by, the employee's protected activity.  JA297-312.

In December 2014, Judge Fischer ordered discovery on EDMC's purpose and process in implementing the ADR Policy, denying EDMC's motion to dismiss without prejudice to its being renewed after discovery.  JA323-24.  Despite the discovery, the supplemental brief Jones filed after discovery (JA671-86) identified no facts showing a causal connection between his EEOC activity and the rollout of EDMC's company-wide ADR Policy.  JA671-86.  Instead, he argued that certain internal EDMC emails discussing the ADR Policy rollout (none of which mentioned Jones or Scott, or any ongoing EEOC matters) showed that the Policy was somehow procedurally unconscionable.  *Id.*  However, as EDMC's response explained, those

emails actually showed the ADR Policy was neither procedurally nor substantively unconscionable:  rather, they showed that EDMC made significant efforts to ensure employees were aware of and understood all the ADR Policy's terms, and that those terms were highly protective of employees' rights.  JA688-704.

After the parties had filed reply and sur-reply briefs on the same questions (JA723-46, 766-78), Jones moved for partial summary judgment, repeating the same arguments he made in his opposition to EDMC's motion to dismiss (JA779-811).

Judge Fischer, having considered all of Jones's arguments and evidence, entered a memorandum order on April 23, 2015 dismissing Jones's case and ordering that Jones's claims be "resolved in accordance with [EDMC's] … ADR Policy."  JA19.  The opinion noted both the *Masoner* and the *Scott* holdings and, following suit, ruled that all of Jones's claims were subject to the ADR Policy, which Jones had accepted by remaining employed at EDMC.  JA19-22.

Plaintiffs filed notices of appeal on May 8 and 12, 2015.  JA1-4.

## SUMMARY OF ARGUMENT

The outcome in this case was compelled by a straightforward application of controlling law to the plain language of the arbitration agreement and the uncontroverted facts.  There is no real dispute that EDMC's ADR Policy covers Plaintiffs' claims.  Nor can there be any dispute that Plaintiffs are bound by the ADR Policy.  Nonetheless, Plaintiffs try to avoid arbitration by asserting that the company-wide ADR Policy—which expressly authorizes employees to file EEOC claims prior to arbitration—amounts to a retaliatory attempt to "arbitrationalize" their claims after they had reported them to the EEOC.  Plaintiffs' argument fails for multiple reasons.  The district court properly rejected it and ordered Plaintiffs' claims to arbitration.

As an initial matter, the ADR Policy is a valid and binding arbitration agreement that covers Plaintiffs' claims.  Plaintiffs do not seriously dispute this on appeal or raise an issue implicating arbitrability.  But, because some of their arguments could be read to present challenges on this basic issue, EDMC explains briefly below why Plaintiffs are bound by the ADR Policy and why it requires arbitration of their claims.

Plaintiffs' main argument on appeal—that the ADR Policy was impermissible retaliation for their protected EEOC activities—fails as a matter of law, fact, and logic.  As a matter of law, the implementation of an arbitration policy is not a materially adverse

act that can constitute retaliation. As a matter of fact, an examination of the ADR Policy's plain language shows that it does not forbid or otherwise hinder Plaintiffs (or any EDMC employee) from filing EEOC complaints—indeed, it expressly contemplates and authorizes EEOC complaints. Nor did EDMC threaten Plaintiffs with termination. As a matter of logic, the implementation of the ADR Policy cannot be considered retaliation for Plaintiffs' protected activities. The company-wide Policy was implemented simultaneously and uniformly for thousands of EDMC employees, not because of Plaintiffs' EEOC activities.

Plaintiffs' appeal brief also appears to raise a number of other issues—namely, that the district court erred by dismissing their complaints with prejudice, that the district court should have considered a document Jones presented under an exception to Rule of Evidence 408, and that the district court should have granted summary judgment for Plaintiffs. To the extent any of these issues are presented in this case or have been properly preserved, they too are meritless. Neither district court erred in compelling Plaintiffs to arbitrate their claims.

## STANDARD OF REVIEW

A "question concerning the applicability and scope of an arbitration agreement" is subject to *de novo* review. *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (quotation marks and citation omitted). The procedural vehicle used to resolve the arbitrability question does not alter the standard of review. This Court reviews a decision granting a motion to dismiss *de novo*. *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 559 (3d Cir. 2002). To the extent the district court here treated EDMC's motions as motions for summary judgment by relying on the uncontested facts (including the allegations in Plaintiffs' complaints) and documents attached to the pleadings, this Court reviews a decision granting summary judgment *de novo* as well. *Antonelli v. New Jersey,* 419 F.3d 267, 272 (3d Cir. 2005).

## ARGUMENT

## I.    Plaintiffs' Claims Must Be Sent To Arbitration Because They Are Covered By The ADR Policy

The district court correctly compelled arbitration because Plaintiffs agreed to the ADR Policy by continuing their employment at EDMC, and because Plaintiffs' claims fall squarely within the scope of the ADR Policy's mandatory arbitration provision.

On appeal, Plaintiffs do not raise an issue explicitly challenging that core arbitrability ruling. They have, therefore, waived the issue.

*See United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008); *United States v. DeMichael,* 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (citation omitted).[9]   Nonetheless, because some of Plaintiffs' arguments on other issues suggest a challenge to the arbitrability of their claims, EDMC will briefly address why the district court was correct to rule that the ADR Policy requires arbitration of Plaintiffs' claims.

## A.     Governing Law

Questions of arbitrability are governed by the FAA.  *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (citing *Khan v. Dell, Inc.*, 669 F.3d 350, 354 (3d Cir. 2012)) (other citations omitted).   Section 2 of the FAA provides that written arbitration agreements must be construed as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

---

[9] Plaintiffs cannot preserve and present issues on appeal by stating they "incorporate and reassert all legal arguments made in the District Courts" (*see* Appellants' Br. 19).  *Eddy v. Corbett*, 381 F.App'x 237, 239 (3d Cir. 2010); *Gladysiewski v. Allegheny Energy Serv. Corp.*, 282 F.App'x 979, 981 (3d Cir. 2008) ("An appellant … must raise his argument in the body of his brief and may not incorporate by reference his prior pleadings.").

the revocation of any contract."  9 U.S.C. § 2.  Section 4 of the FAA requires courts to compel arbitration "in accordance with the terms of the agreement."  9 U.S.C. § 4.

Moreover, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The United States Supreme Court has made clear that the FAA represents "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Id.*; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (recognizing "the strong federal policy in favor of enforcing arbitration agreements").  Thus, to the extent there is any question concerning the arbitrability of Plaintiffs' claims, federal law overwhelmingly promotes a resolution in favor of arbitration under the ADR Policy.  *See Moses H. Cone*, 460 U.S. at 24-25 ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

As for the particulars of the arbitrability analysis, a disputed claim must be arbitrated if:  (1) "there is a valid agreement to arbitrate between the parties" and (2) "the merits-based dispute in question falls within the scope of that valid agreement."  *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citations and quotations omitted).  Here, both elements are satisfied.

## B.    The ADR Policy Is A Valid Agreement To Arbitrate

Whether there is a valid agreement to arbitrate is a question of state contract law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).    Under Pennsylvania law, there is a valid contract if:  (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was consideration.    *Id.* (applying Pennsylvania law); *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998) (same).

**(1) *Both parties manifested an intention to be bound by the ADR Policy.*** In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (applying Pennsylvania law) (other internal citations omitted).  An employee's intent to agree to an ADR policy is manifested when the employee continues employment with the company after receiving an ADR policy that provides that continuing employment after receipt of the policy indicates acceptance of its terms. *See, e.g., Alexander v. Raymours Furniture Co.*, Civ. No. 13-5387, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014) (collecting cases applying Pennsylvania law and holding that "an employer's distribution of a

mandatory arbitration policy to existing at-will employees—as part of an employee handbook or as a freestanding document—constitutes an offer of continued employment, subject to the terms of the arbitration program, which an employee accepts by continuing his employment after receiving notice of the program.").[10]

---

[10] *See also, e.g.*, *Wilson v. Darden Rests., Inc.*, Civ. No. 99-5020, 2000 WL 150872, at **3-4 (E.D. Pa. Feb. 11, 2000) ("[Plaintiff's] continued employment for two months after being made aware of the future implementation of the [arbitration policy], and beyond the [arbitration policy]'s effective date, is sufficient to constitute both acceptance of the Company's offer as well as consideration for an enforceable arbitration agreement."); *DuBois v. Macy's East Inc.*, 338 F.App'x 32, 34 (2d Cir. July 9, 2009) ("As [plaintiff] continued employment with Macy's after receiving notice of the new dispute resolution program and as he has not presented sufficient evidence to allow a reasonable factfinder to conclude that he opted out of the associated mandatory arbitration, his continued employment constituted acceptance of the modification of the terms of his employment to include such mandatory arbitration."); *Acher v. Fujitsu Network Commc'ns, Inc.*, 354 F.Supp.2d 26, 36 (D. Mass. 2005) ("[I]n some cases, most typically where arbitration agreements have been mailed to employees, circulated to employees in an employee handbook or with an accompanying memorandum, or distributed to employees at an explanatory meeting, continuing to work with the knowledge that a dispute resolution policy is a mandatory condition of continued employment can constitute acceptance (and the continued employment, consideration)") (internal marks and quotations omitted).

That is exactly what happened here.  The plain language of the ADR Policy states that continued employment constitutes acceptance of the terms of the Policy.  JA84, 97 ("continuing employment with the Company after receipt of this Policy constitutes agreement to abide by its terms").  Plaintiffs have conceded that they understood this term.  JA37-39, 52-53.  And neither Plaintiff terminated his employment with EDMC after receiving notice of the ADR Policy on October 3, 2012.  Scott remained employed by and continued to receive compensation from EDMC for six more months, until his employment was terminated in the first week of April 2013.  JA39.  Jones remained employed by and continued to receive compensation from EDMC for two and a half more months, until his employment was terminated on January 24, 2013.  JA54.  (Plaintiffs' assertions on appeal that they were "fired from their jobs by Appellee within days of the continuation of their employment" and that they were "terminated days later" (Appellants' Br. 20) are not supported by the record.)

In light of the ADR Policy's plain language and Plaintiffs' admitted understanding of it, Plaintiffs' subsequent months of

continued employment at, and receipt of compensation from, EDMC manifested their agreement to be bound by the ADR Policy.[11]

**(2)** *The terms of the ADR Policy are sufficiently definite to be enforced.*  Plaintiffs do not contest that the terms of the ADR Policy are sufficiently definite to be enforced.  Indeed, in the district courts, Plaintiffs conceded that the ADR Policy covers their claims under Title VII and the ADEA.  JA152, 176 (stating that Plaintiffs "do[ ] not dispute" EDMC's description of the ADR Policy's terms covering such claims).

**(3)** *There was consideration for the ADR Policy.*   In these circumstances, the third requirement (consideration) is closely related to the first (intent to agree).  The ADR Policy was supported by two types of consideration, either of which is sufficient to make it

_____

[11] Plaintiffs are mistaken to the extent they now argue that they did not agree to the ADR Policy because they did not sign it and because they registered their complaints about the Policy with EDMC and the EEOC.  *See* Appellants' Br. 11-14, 16-18, 20.  Under Pennsylvania law, "[a]s a general rule, signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties."  *Am. Eagle Outfitters,* 584 F.3d at 584 (citing *Commerce Bank / Pennsylvania v. First Union Nat'l Bank*, 911 A.2d 133, 145-46 (Pa. Super. 2006)).  As explained, the ADR Policy contains no such signature requirement—it unambiguously states that continuation of employment constitutes acceptance.  And complaining about or challenging the terms of an agreement is not the same as rejecting it.

enforceable.  First, the plain language of the ADR Policy shows that it binds both EDMC and its employees—both agreed to arbitrate covered claims between them.   JA84, 97.   Because EDMC and its employees made a mutual covenant to arbitrate, they each provided adequate consideration to support the enforceability of their dispute resolution agreement.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603-04 (3d Cir. 2002)) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 535 (3d Cir. 2009) (same); *Masoner*, 18 F.Supp. 3d at 660 ("it is clear from the language in [EDMC's] ADR Policy that the ADR Policy applies with equal force to claims brought by either the employee or employer").

Second, Plaintiffs' continued employment and receipt of compensation after implementation of the ADR Policy constitutes adequate consideration to support the agreement.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 n.3 (3d Cir. 2002) (after finding that mutual agreement to arbitrate is consideration, declining to reach argument that continued employment is not adequate consideration, but calling the argument "questionable").  Numerous courts applying Pennsylvania law and the FAA have held that continued employment is sufficient consideration to bind an employee to an

arbitration agreement. *See, e.g., Gutman v. Baldwin Corp.*, No. 02-7971, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002); *Evans v. Atria Assisted Living*, Civ. No. 01-1193, 2001 WL 34355643, at *2 (E.D. Pa. Dec. 21, 2001); *Hamilton v. Travelers Prop. & Cas. Corp.*, No. 01-11, 2001 WL 503387, at *2 (E.D. Pa. May 11, 2001); *Wilson*, 2000 WL 150872, at *4 (E.D. Pa. Feb. 11, 2000).[12]

---

[12] Pennsylvania is not alone in holding that continued employment is valid consideration for an agreement to arbitrate. *See, e.g., DuBois, supra; Acher, supra; Ellerbee v. GameStop, Inc.,* 604 F. Supp. 2d 349, 354 (D. Mass. 2009) ("Plaintiff's continued employment constitutes adequate consideration for the [arbitration agreement]"); *Adams v. Gheen Irrigation Works, Inc.*, Civ. No. 08-6148, 2008 WL 3539624, at *3 (D. Or. Aug. 13, 2008) ("Plaintiff was an at-will employee whose continued employment provided sufficient consideration for the arbitration agreement."); *Wilkerson v. Serv. Corp. Int'l*, Civ. No. 02-0982, 2003 WL 21052128, at *3 (S.D. Ind. Apr. 2, 2003) ("Where, as here, the employer provides independent consideration for the arbitration provision—continued employment and an agreement to be bound by any arbitration decision—and where, as here the employee agrees to arbitrate the enumerated claims, the arbitration provision is consistent with employment at will."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 734-36 (7th Cir. 2002) (continued employment is "sufficient consideration to support a promise to arbitrate," even where the employee has not signed the arbitration agreement); *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp. 2d 815, 824 (S.D. Ohio 1999) ("Plaintiff promised to arbitrate all employment-related disputes in exchange for Defendant's promise to consider her for employment and then to continue to employ her").

In support of their contention that continued employment is not valid consideration for an agreement to arbitrate, Plaintiffs point to the Pennsylvania Supreme Court's recent case *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266 (Pa. 2015). Appellants' Br. 21-22. But *Socko* does not support Plaintiffs' argument. Unlike this case, *Socko* addressed a restrictive covenant not to compete — not an agreement to arbitrate. And it concerned the "interplay between [the] common law treatment of restrictive covenants and the effect of a [Pennsylvania] statute [the Uniform Written Obligations Act, 33 P.S. § 6]" — not the interplay between an arbitration agreement and the Federal Arbitration Act. *Socko*, 126 A.3d at 1276.

*Socko* held that an employer adding a restrictive covenant not to compete to an employee's contract must provide "'new' and valuable consideration" above and beyond continued employment. 126 A.3d at 1275. *Socko's* analysis and conclusion were driven by the fact that covenants not to compete are "generally disfavored" in Pennsylvania because "Pennsylvania courts have historically viewed such covenants as contracts in restraint of trade that prevent a former employee from earning a livelihood." 126 A.3d at 1273-74 (citing *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 917 (Pa. 2002); *Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 844-45 (Pa. 1957)).

But that reasoning has no bearing on an analysis of an employer's implementation of an arbitration agreement. Arbitration agreements do not raise the concerns underlying the decision in *Socko*—they do not "prevent a former employee from earning a livelihood." *Socko*, 126 A.3d at 1273-74 (describing restrictive covenants); *see also Alexander v. Raymours*, 2014 WL 3952944, at **6-7. Indeed, arbitration agreements are not disfavored—just the opposite. Arbitration is a favored means of dispute resolution under both federal and Pennsylvania law and policy. *Moses H. Cone*, 460 U.S. at 24; *Keystone Tech. Grp., Inc. v. Kerr Grp., Inc.*, 824 A.2d 1223, 1226 (Pa. Super. 2003) (as a matter of public policy Pennsylvania "courts favor the settlement of disputes by arbitration") (citation and quotation omitted). The FAA requires that arbitration agreements be treated like any other contract—not like a particularly disfavored class of contracts. *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) ("courts must place arbitration agreements on an equal footing with other contracts … and enforce them according to their terms") (citations omitted). Accordingly, *Socko's* holding requiring additional consideration does not apply to the ADR Policy, and Plaintiffs'

continued employment was valid consideration for their promise to arbitrate.[13]

In sum, the ADR Policy is a valid, enforceable dispute resolution agreement.

### C.    The ADR Policy Covers Plaintiffs' Claims

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009) (quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).

Although Plaintiffs suggest that their federal statutory claims should not be subject to arbitration (Appellants' Br. 22-24), it is well settled, as a matter of law, that such claims are arbitrable. *Seus v. John*

_____

[13] In addition, the mutual agreement to arbitrate is sufficient consideration, as discussed above. *See* p. 33, *supra*. Unlike a restrictive covenant not to compete, in which an employee promises not to compete but the employer promises nothing beyond continued employment, a mutually binding arbitration agreement is an exchange of promises.

*Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998) (ADEA and Title VII claims are arbitrable) (citing *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 27, 34 n.5 (1991)); *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 493 (3d Cir. 2014) ("Courts are required to 'enforce agreements to arbitrate according to their terms even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command.'") (quoting *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012); *Shearson / Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) (quotation marks and alterations omitted). Moreover, in the district court, Plaintiffs conceded that the ADR Policy covers claims under Title VII and the ADEA. JA152, 176.

Nor does it make a difference that parts of Plaintiffs' claims purportedly arose prior to the implementation of the ADR Policy in October 2012. By its express terms, the ADR Policy covers *all* work-related disputes, expressly establishes an effective date of July 1, 2012, and contains no provision precluding retroactivity. JA84; *see also* pp. 6-9, *supra*. Thus, the ADR Policy is clearly intended to cover all claims purportedly arising after that July 1, 2012 effective date, including all of Plaintiffs' claims in this litigation.

The fact that Plaintiffs filed EEOC charges prior to the implementation of the ADR Policy in October 2012 also has no bearing on the matter given that the ADR Policy does not preclude

coverage of claims previously filed with the EEOC.  JA87.  To the contrary, the ADR Policy expressly allows Plaintiffs to exhaust their administrative remedies with the EEOC while retaining arbitrability over their claims after they exhausted the administrative process. JA87 ("Both the Company and the employee retain the right to file administrative charges with any federal, state, or local administrative agency with enforcement responsibilities.  However, after exhaustion of the administrative process, any remaining issue or dispute between the Company and its employee shall be resolved exclusively through these dispute resolution procedures.").

Accordingly, Plaintiffs' claims plainly fall within the scope of the ADR Policy and are subject to the dispute resolution procedures—arbitration—established in the Policy.

## II.    The ADR Policy Was Not Retaliatory Under Title VII Or The ADEA

Given all of this, Plaintiffs try instead to avoid arbitration by advancing a meritless retaliation theory.  This theory—that EDMC's implementation of the ADR Policy was retaliation for their EEOC activities in violation of Title VII and the ADEA—fails for two independent reasons.   As a matter of law, implementing an arbitration policy is not a materially adverse employment action. And, as a matter of fact, the ADR Policy was not implemented *because of* Plaintiffs' EEOC complaints.

### A.    Governing Law

Claims under the nearly identical anti-retaliation provisions of the ADEA and Title VII[14] are analyzed under the familiar *McDonnell Douglas* burden-shifting analysis.    *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002).    To prevail on a retaliation theory, employees must first establish a *prima facie* case of retaliation by proving that: (1) they engaged in activity protected; (2) their employer engaged in a materially adverse action; and (3) a causal connection existed between their protected activity and the adverse employment action.    *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citing, *inter alia*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)); *see also Nassar*, 133 S.Ct. at 2534

---

[14] The ADEA's anti-retaliation provision states:  "It shall be unlawful for an employer to discriminate against any of his employees … *because* such individual … has opposed any practice made unlawful by this section, or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d) (emphasis added).

Title VII's anti-retaliation provision states:  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … *because* he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C.  § 2000e-3 (emphasis added).

(holding an employee "must establish that his or her protected activity was a *but-for* cause of the alleged adverse action by the employer") (emphasis added).  Then, if the employer articulates a legitimate, non-retaliatory reason for its action, the employees must prove the articulated reason is merely a pretext for retaliation.  *See id.*

Thus, to show retaliation here, Plaintiffs were required to show that:  (1) their initial EEOC complaints were protected activity; (2) EDMC's implementation of the ADR Policy was a materially adverse action; and (3) EDMC implemented the ADR Policy because of Plaintiffs' initial EEOC complaints, not for any other articulated reason.

EDMC does not contest that Plaintiffs' EEOC complaints are protected activity.  But Plaintiffs failed to show, or even plausibly allege, either that the ADR Policy was a materially adverse action or that EDMC implemented the Policy because Plaintiffs filed complaints with the EEOC.

### B.    An Arbitration Agreement Is Not A Materially Adverse Action

The gravamen of Plaintiffs' retaliation theory is that EDMC's implementing the ADR Policy was "materially adverse" to them.  But implementing an arbitration policy is not a materially adverse employment action.  In *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), the Supreme Court established the standard for

determining whether an employer has engaged in a materially adverse action. Plaintiffs rely on *Burlington* (Appellants' Br. 24-25), but it does not support their retaliation theory.

In *Burlington*, the Court stated that the statutory anti-retaliation "provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee … mean[ing] that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 57.

Plaintiffs point to no case holding that implementing an arbitration policy can be considered retaliatory. That is not surprising given that the United States Supreme Court has made clear that an agreement to arbitrate does not deprive a party of substantive or procedural rights—it merely establishes an alternative, procedurally equivalent, forum for adjudicating substantive rights. *American Exp. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2310 (2013); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

In essence, Plaintiffs are arguing that they have a right to litigate their Title VII and ADEA claims in court and that the ADR Policy cannot abrogate that supposed right. This argument rings hollow in the face of long-standing precedent holding that employment discrimination claims are subject to arbitration pursuant

to the FAA.  *See Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) (rejecting argument "that compulsory arbitration is improper because it deprives claimants of the judicial forum provided for by the ADEA"); *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 493 (3d Cir. 2014).  "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors*, 473 U.S. at 628.

Nor is arbitration an inferior means of adjudicating Plaintiffs' claims.  In concluding that ADEA claims are arbitrable, the Supreme Court renounced its own prior position that an arbitral forum is inferior to a judicial forum for deciding federal civil rights claims:

> The Court in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), also expressed the view that arbitration was inferior to the judicial process for resolving statutory claims.  That "mistrust of the arbitral process," however, has been undermined by our recent arbitration decisions.  *[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.*

*Gilmer*, 500 U.S. at 34 n.5 (internal citations and quotation marks omitted) (emphasis added).

Here, the fact that the ADR Policy did not deprive Plaintiffs of any substantive or procedural rights is abundantly clear—indeed, it

is plain from the express language of the Policy itself.  The ADR Policy expressly preserves an employee's right to pursue a charge of discrimination or retaliation with the EEOC or any equivalent state or local administrative agency.  JA87 ("Both the Company and the employee retain the right to file administrative charges with any federal, state, or local administrative agency with enforcement responsibilities").[15]

The ADR Policy also provides—and clearly notifies employees—that the employee will have the same procedural rights and remedial rights in arbitration that are available in judicial proceedings.  JA88 (ADR Policy paragraphs 8 and 10).  Indeed, the Policy even provides that EDMC will pay the costs of arbitration—requiring employees to pay only an amount equivalent to a court filing fee, and any amount finally awarded by the arbitrator.  JA87.

In sum, the ADR Policy simply moves the resolution of disputes from a judicial to an arbitral forum while preserving all of an employee's procedural, substantive, and remedial rights.  Given the terms of the Policy—which afford full process to EDMC employees, at a cost likely lower than litigation—the existence of the

---

[15] Plaintiffs' continued assertions that the ADR Policy "retroactively made … having filed federal civil-rights complaint a violation of company policy" (Appellants' Br. 12) is incorrect.

ADR Policy would not dissuade a reasonable employee from engaging in protected activity.

Moreover, the ADR Policy expressly contemplates and preserves the right to engage in the conduct that Plaintiffs point to as the protected activity here—namely, filing a claim with the EEOC. Indeed, the ADR Policy unequivocally acknowledges and preserves both an employee's right to file a charge with the EEOC and the EEOC's right to investigate that charge.  JA87.

Nor does the ADR Policy prevent or hinder the EEOC's ability to investigate claims of discrimination or retaliation.  The record is clear that the EEOC's investigation of Plaintiffs' claims was not hindered in any way.[16]  Both Plaintiffs filed complaints with the EEOC after they received notice of the ADR Policy, and Scott amended his complaint—without impediment—four months after receiving notice.  JA39, 63.  The EEOC investigated all of Plaintiffs' new charges, along with their "pre-existing" charges, as the Right to Sue notices make clear.  JA44-45, 63-64.  Ironically, it was Plaintiffs— not EDMC—who frustrated the EEOC's efforts after the EEOC

_____

[16] Plaintiffs appear to protest that the ADR Policy undermines the EEOC's authority and prerogative.  Not so.  As noted, it expressly permits EEOC claims.  And, nothing in the Policy undermines the EEOC's authority should it elect to pursue a claim, as it is not bound by the ADR Policy. *EEOC v. Waffle House*, 534 U.S. 279 (2002).

notified them on January 16, 2014, of its preliminary finding that it found insufficient evidence to support their discrimination and retaliation claims and requested further evidence. *See* JA205, 296. Rather than provide any further evidence or allow the EEOC to complete its investigation, Plaintiffs demanded their Right to Sue notices. *See* JA44-45, 63-64 ("Notice of Right to Sue (Issued on Request)").

In short, as a matter of law, arbitration does not violate an employee's substantive or procedural rights. And, as a matter of fact, the ADR Policy here did not abrogate those rights in any way. EDMC's decision to implement it was not, therefore, a materially adverse employment action.

## C. There Is No Causal Connection Between Plaintiffs' EEOC Activities And The Implementation Of The ADR Policy

Plaintiffs' retaliation theory also fails as a matter of law and fact because the implementation of the ADR Policy was not caused by Plaintiffs' protected activity (their EEOC complaints). To show retaliation, an employee "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S.Ct. at 2534. And the employee must show that any articulated legitimate, non-retaliatory reason for its action is merely a pretext for retaliation. *Marra*, 497 F.3d at 300.

Here, it is undisputed that EDMC implemented a *company-wide* ADR Policy that affected thousands of employees, including those who had not previously engaged in protected activity. EDMC had been working on the ADR Policy and planning to implement it since, at least, July 2012. JA80, 93. The idea that EDMC did so as retaliation for these two employees' EEOC complaints beggars belief. *See Verma v. Univ. of Pa.*, 533 F.App'x. 115, 119 (3d Cir. 2013) (affirming summary judgment dismissing an employee's retaliation claim on ground that the employee failed to show "but for" causation under *Nassar*).[17]

### III. The District Courts Did Not Err By Dismissing Plaintiffs' Claims With Prejudice

Plaintiffs argue that the district court erred by dismissing their claims with prejudice when compelling arbitration. Appellants'

---

[17] To the extent that Plaintiffs' appeal brief suggests that EDMC retaliated in other ways apart from implementing the ADR Policy, Plaintiffs have not preserved such arguments on appeal. *See United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008); *United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (citation omitted). Moreover, because the ADR Policy is enforceable, any such claims of retaliation must be subject to arbitration, as the district courts held. JA10, 21.

Br. 27.  An examination of the law and the record establishes that this argument is a non-issue—and surely provides no basis for Plaintiffs to avoid arbitration.

Plaintiffs are mistaken to the extent they argue the court should have stayed the cases, rather than dismissing them, pending arbitration.  When "all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it."  *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998), *overruled on other grounds by Green Tree Fin. Corp.–Al. v. Randolph*, 531 U.S. 79 (2000).  Plaintiffs' assertion that *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263 (3d Cir. 2004) holds otherwise is incorrect.  JA27.  *Lloyd* merely held that a district court has "no discretion to dismiss a case *where one of the parties applies for a stay* pending arbitration."   369 F.3d at 269 (emphasis added).   Thus, *Lloyd* means a district court may not dismiss an action *sua sponte* if the party seeking arbitration sought a stay, rather than dismissal.  *Lloyd* does not apply because EDMC did not move for a stay.  *See* JA77, 90.

Nor are Plaintiffs correct that reversal is required because the district court included "with prejudice" language in the dismissal orders.  Plaintiffs argue that a dismissal with prejudice "violates the policy underlying the [FAA]" to resolve cases efficiently because a dismissal with prejudice "effects an automatic right of appeal." Appellants' Br. 27.  To be sure, a dismissal, unlike an order staying a

case in favor of arbitration, is immediately appealable under the FAA—but that is equally true of dismissals with or without prejudice. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 599-602 (3d Cir. 2002). And, in any event, Plaintiffs were not aggrieved by the Rule 12 procedural path used in this case—indeed, that path allowed them to appeal when the FAA would have otherwise barred an appeal. *See* 9 U.S.C. § 16(b) (no appeal from order compelling arbitration).

Nor will a dismissal with prejudice prevent the district court from entering final judgment after arbitration, as Plaintiffs imply. *See* Appellants' Br. 27. It is well established that courts retain jurisdiction to execute final judgment after arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000) (district court's dismissal with prejudice in favor of arbitration is a final order which "leaves nothing more for the court to do but execute the judgment"); *Blair*, 283 F.3d at 600 (noting the "ability of a party to an arbitration to bring a later proceeding in a district court to enter judgment on an arbitration award or vacate or modify that award" after a dismissal with prejudice).

In sum, the district court did not err, or adversely affect Plaintiffs' rights at all, by dismissing Plaintiffs' claims with prejudice.[18]

## IV.    This Case Does Not Present An Issue Regarding Federal Rule of Evidence 408

In Plaintiffs' third issue on appeal, Jones appears to be asking this Court to rule on whether Federal Rule of Evidence 408—which bars admission of settlement communications to show liability—is subject to an exception if the communications show an independent statutory violation.    Jones is incorrect for two independently dispositive reasons.  First, this issue is not presented by this case—the district court did not exclude any evidence under Rule 408.  Second, Jones    mischaracterizes    the    import    of    the    evidence—the communication in question (an e-mail from Jones's counsel to EDMC) does not show any statutory violation.

Jones argues that an exception to Rule 408 should apply to permit the admission of an October 4, 2012 e-mail from Jones's

---

[18] To the extent that Plaintiffs are concerned about any adverse *res judicata* or estoppel effect that a with-prejudice dismissal might have on their arbitration proceedings, EDMC was clear that it would "not seek to preclude Plaintiff[s] from pursuing [their] claims in arbitration" based on the dismissal (JA701), a reassurance that EDMC now repeats.

counsel accusing EDMC of retaliation (JA685).  Appellants' Br. 27-33.
Jones's counsel labeled the e-mail "Rule 408 Communication."
JA685.    Nonetheless, he referenced it in and attached it to his
Supplemental Brief with Regard to Documentary Findings in Limited
Discovery, stating without further explanation:  "(Defendant's waiver
noted)."    JA678.    EDMC responded that it had not waived any
Rule 408 protection and pointed out that, to the extent the court
considered the e-mail, it showed that Jones "understood that his
continued employment with EDMC constituted acceptance of the
ADR Policy."  JA696.

   When Jones reiterated that the court should consider the e-mail,
he argued that it "involved a retaliation threat apart at the time from
the underlying discrimination claims," and thus should be admitted.
JA725 n.1.   (He appears to present the same argument on appeal.
*See* Appellants' Br. 27-33.)  Again, EDMC responded by pointing out
that:  (i) it had not waived Rule 408 protection; and (ii) the email, if
admitted, showed Jones knew that his continued employment
constituted acceptance of the ADR Policy, and added that (iii) the
email did not show any retaliation by EDMC.  JA771-72.   To the
contrary, as EDMC pointed out, the email was *from* Jones's counsel
and *accused* EDMC of retaliation; Jones's counsel's statements
accusing EDMC of retaliation were not evidence of any retaliatory act
by EDMC.  JA772.

In any event, Jones was not aggrieved by any evidentiary ruling.  The district court did not exclude the email—and there is no indication that it failed to consider it.  In its memorandum order, the court noted that it had considered "all related briefing," including the briefs discussing the email and the Rule 408 issue, "Docket Nos. … 32, 33, 34, 37."  JA19.  Thus, although Jones purports to raise the issue on appeal, there is no adverse exclusionary ruling below for this Court to review.  Moreover, the email does not bear on the outcome of the case or this appeal, because it does not show anything but Jones's counsel telling EDMC that he believed the ADR Policy was retaliatory.  For all the reasons above, that position is incorrect, and Jones's counsel's statements to EDMC otherwise do not change that.[19]

---

[19] Plaintiffs also identify as "Issue #4" whether EDMC waived its right to exclude the email under Rule 408 by referencing the email in discovery responses.  Appellants' Br. 9, 28.  This argument fails for the same reason Plaintiffs' other Rule 408 argument fails, and also because Plaintiffs have waived it on appeal by not developing or arguing it at all.  *See Hoffecker*, 530 F.3d at 162; *DeMichael,* 461 F.3d at 417 ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (citation omitted).

## V.    The District Court Did Not Err By Not Granting Summary Judgment for Plaintiffs

Finally, Plaintiffs argue that the district court erroneously denied them summary judgment.    Appellants' Br. 33-35.    They present no viable argument for error.

As an initial matter, neither district court judge denied Plaintiffs' summary judgment motions.    Scott's motion for summary judgment was stricken by Judge Cercone because it was "inappropriate at this stage of the litigation," *i.e.* before any discovery had taken place.    JA165.    Scott did not renew his motion.    Jones's motion for summary judgment was stayed by Judge Fischer and then terminated as moot after EDMC's motion to dismiss was granted. JA34-35.    In neither case did EDMC ever respond to the Plaintiff's summary judgment motion, and in neither case did the district court rule on it.

Moreover, even if Plaintiffs' motions were "denied," as Plaintiffs contend they were, no appeal lies from an order denying summary judgment.    *Frank C. Pollara Group, LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 185 (3d Cir. 2015) ("[O]rders denying summary judgment do not qualify as 'final decisions' subject to appeal" except under exceptional circumstances not present here) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011)).    Finally, Plaintiffs' summary judgment arguments fail on the merits for the same reasons

their other merits arguments fail.  *See* pp. 26-46, *supra*.  On appeal, Plaintiffs argue that summary judgment on their retaliation claims should have been granted based on the Pennsylvania Supreme Court case *Socko*.  Appellants' Br. 34.  As explained above, *Socko* does not apply to arbitration agreements.  *See* pp. 35-36, *supra*.  Plaintiffs appear to rely on a passage from *Socko* discussing the Pennsylvania principles of statutory construction.  Appellant's Br. 34.  Those principles are not relevant to Plaintiffs' summary judgment motions—and Plaintiffs do not explain why they believe they are.[20]

Accordingly, Plaintiffs have raised no reason to grant them summary judgment.

---

[20] Plaintiffs' oblique reference to arguments supposedly made "quite clearly and repeatedly below" (Appellants' Br. 34) is insufficient to present any such arguments on appeal.  *Eddy v. Corbett*, 381 F.App'x at 239; *Gladysiewski*, 282 F.App'x at 981 ("An appellant … must raise his argument in the body of his brief and may not incorporate by reference his prior pleadings.").

## CONCLUSION

Plaintiffs' claims are covered by the ADR Policy.  Therefore, the district court correctly sent them to arbitration.

Plaintiffs' attempt to avoid arbitration by arguing that the ADR Policy itself is retaliatory is wrong on multiple fronts.  As a matter of law, an arbitration agreement is not an adverse employment action. As a matter of fact, the ADR Policy is highly protective of employees' rights.  And, in any event, there is no evidence that EDMC implemented the company-wide Policy to retaliate for these two employees' protected activities.

Plaintiffs' other issues on appeal are equally meritless.

This Court should affirm both district court rulings and order Plaintiffs to arbitrate their claims.

April 20, 2016                    Respectfully submitted,

                                 *s/ Kim M. Watterson*
                                 Catherine S. Ryan
                                 Kim M. Watterson
                                 Richard L. Heppner Jr.
                                 James T. Holt
                                 REED SMITH LLP
                                 225 Fifth Avenue
                                 Pittsburgh, PA  15222
                                 Phone:  (412) 288-3131
                                 *Counsel for Appellee*
                                 *Education Management Corp.*

## CERTIFICATES OF SERVICE AND COMPLIANCE

I hereby certify that, on April 20, 2016, I electronically filed the foregoing Appellee's Response Brief with the Clerk of this Court by using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I also hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P.  32(a)(7)(B) because it contains 11,391 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface, Book Antiqua, 14-point, using Microsoft Word.

I further hereby certify, pursuant to Third Circuit Local Appellate Rule 3.1(c), that the text of the brief filed with the Court via CM/ECF is identical to the text of the paper copies, and further that our virus protection program, Trend Micro Office Scan Client, has been run on the electronic version of the brief and no virus was detected.

*s*/ Kim M. Watterson
*Counsel for Appellee*
*Education Management Corp.*
